UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mary B.,[1] <br><br> Plaintiff, <br><br> vs. <br><br> Kilolo Kijakazi, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Civil Action No. 5:22-2321-KDW <br><br><br> ORDER |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision is supported by substantial evidence and whether the Commissioner's decision contains an error of law. Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for further action for the reasons discussed herein.

I.     Relevant Background

    A.     Procedural History

Plaintiff filed an application for DIB in December 2017 alleging a disability onset date of December 31, 2012. Tr. 280-81. Plaintiff's application was denied initially on May 4, 2018, Tr. 98, and upon reconsideration on July 31, 2018, Tr. 112. Plaintiff requested a hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

administrative law judge ("ALJ"). Tr. 154-55. On October 2, 2019, a hearing was held before ALJ James Cumbie. Tr. 68-85. On November 20, 2019, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled through her date last insured of December 31, 2017. Tr. 113-28. Plaintiff requested review of the ALJ's decision. Tr. 207-09. The Appeals Council granted Plaintiff's request for review and on December 15, 2020, issued an order remanding the case to the ALJ. Tr. 134-36. The Appeals Council noted that the hearing decision found that Plaintiff last met the insured status requirements of the Act on December 31, 2017; however, the record showed Plaintiff's date last insured was June 30, 2018. Tr. 135. The Appeals Council directed the ALJ on remand to further consider Plaintiff's residual functional capacity ("RFC") through the date last insured and offer Plaintiff the opportunity for a hearing. Tr. 135-36. ALJ Cumbie conducted a second administrative hearing on September 29, 2021, taking testimony from Plaintiff, who was represented by counsel, and from a vocational expert ("VE"). Tr. 35-67. On February 9, 2022, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 12-27. Plaintiff again requested review of the decision from the Appeals Council. Tr. 277-78. After granting Plaintiff's request for additional time, Tr. 7-8, the Appeals Council denied Plaintiff's request for review on June 17, 2022, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed July 20, 2022. ECF No. 1.

  B.  Plaintiff's Background

  Born in 1959, Tr. 479, Plaintiff was 59 years old on her date last insured of June 30, 2018. In her January 2018 Disability Report-Adult form Plaintiff indicated that she completed high school and two years of college, did not attend special education classes, and had not completed any type of specialized job training, trade or vocational school. Tr. 484. Her past relevant work

2

("PRW") is listed as high school substitute teacher and college sign language interpreter. *Id*. Plaintiff noted that she stopped working on June 1, 2017, because of her conditions which she listed as: diabetes, neuropathy, peripheral artery disease, high blood pressure, arthritis, bursitis, left knee injury, right hip pain, breast cancer stage 1, and fatigue. Tr. 483. In this report Plaintiff indicated that she was 5'1" tall, weighed 138 pounds, and her conditions caused her pain or other symptoms. *Id*.

In a May 30, 2018 Disability Report Appeal, Plaintiff indicated a change in her medical condition as of December 2017 of lymphedema of the right breast and underarm. Tr. 506. Plaintiff noted a change in her activities due to her condition which she described as being "very inactive" and noted that she "lie[s] in a compression body suit 1 hr daily." Tr. 510. In a subsequent Disability Report Appeal dated August 16, 2018 Plaintiff noted additional changes related to her conditions. Tr. 521. Plaintiff indicated that she was falling more frequently, and she was unable to grasp objects. *Id*.

       C.      Proceedings from Second Administrative Hearing

Plaintiff appeared with counsel for her second administrative hearing in Macon, Georgia on September 29, 2021. Tr. 35. VE Melissa Neel also appeared and testified. *Id*. Due to the extraordinary circumstances of the Covid-19 pandemic, the hearing was conducted by telephone. Tr. 38.

          1.  Plaintiff's Testimony

In response to questions from her attorney Plaintiff described the medical problems she was having prior to June 2018 that prevented her from being able to work. Tr. 47-48. Plaintiff testified that she has been having brain bleeds that her surgeon believes have been occurring for years, and she has had two brain surgeries. Tr. 48. Plaintiff stated that she has lymphedema on the

3

right side of her neck, under her right arm, and the side of her chest; she has a 78 percent blocked artery that causes numbness and she drops things with both hands; she has had three surgeries to implant four stents; she falls "a whole lot" which may be related to the brain bleeds; she has little feeling in her feet, particularly her right foot which may be due to PAD (peripheral artery disease) or diabetic neuropathy; her memory is "horrible"; and she is diabetic. *Id.* Plaintiff's attorney asked if there were any mental issues prior to June 2018 that kept her from working. Tr. 49. Plaintiff testified she has anxiety and what has been diagnosed as situational depression related to her health and financial issues. *Id.* Plaintiff stated she has trouble concentrating and stated that she has to "reread a paragraph several times just to get the gist of it." *Id.* She also stated that her "mind is just constantly wandering[.]" *Id.* Plaintiff testified that prior to June 2018 there were periods when she isolated herself from others because of health-related issues. Tr. 49-50. Plaintiff testified that prior to June 2018 she could walk for three minutes before needing to sit down, and she could stand for "[m]aybe five" minutes. Tr. 50-51. Plaintiff stated that prior to June 2018 she used a cane constantly that was prescribed for her by her doctors. Tr. 51. Plaintiff testified that prior to June 2018 she worked part-time with limited hours at Converse College doing sign language interpreting. *Id.* Plaintiff testified she worked as an interpreter for two classes which amounted to six hours a week in a semester. Tr. 52. Plaintiff stated that she had problems with signing because she was unable to hold her arms up and she was having difficulty making clear signs with her fingers. Tr. 54. Plaintiff testified that her "brain still processes it but . . . when it gets to trying to get it out through [her] hands, they just don't – it's almost like having a speech impediment but having it in your hands." *Id.* Plaintiff stated that she was given a director's chair to sit in when she was interpreting. Tr. 55. Plaintiff confirmed that she had done interpreting a long time and had worked interpreting college lectures that lasted from 50 minutes to an hour and 20 minutes

4

depending on the class. *Id.*

Plaintiff testified that prior to June 2018 she was taking the fluid pill metformin, and medication for high blood pressure, high cholesterol, a blood thinner, and Lexapro for anxiety. Tr. 56. Plaintiff testified to being fatigued from chemotherapy and stated that she still feels fatigued. Tr. 57. Plaintiff stated that she takes naps during the day for a total of an hour-and-a-half or two hours. *Id.* Plaintiff stated that her left ankle swells, so she elevates it while sitting. *Id.* Plaintiff testified that prior to June 2018 she could "sit for a long time." Tr. 58. She stated that if her ankle was swollen, she would prop it up every time she sat down. *Id.*

The ALJ questioned Plaintiff regarding her earnings as an independent contractor sign language interpreter in 2018 and 2019. Tr. 58-59. The ALJ also confirmed that Plaintiff's past work was as a substitute teacher and sign language interpreter. Tr. 60.

2. VE's Testimony

The VE described Plaintiff's past work as interpreter, Dictionary of Occupational Titles ("DOT") number 137.267-014, light, skilled, SVP: 5; and substitute teacher/teacher's aide II, DOT number 249.367-074, light, semiskilled, SVP: 3. Tr. 61. The VE testified that those jobs did not provide transferable skills with no more than very little, if any, adjustment of past skills. *Id.*

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's "age, education, and work experience limited to light but must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibrations, and fumes, odors, dusts, gases, and poorly ventilating areas." Tr. 61. The VE testified that past work would be available for both jobs as generally performed. *Id.* The VE also testified the individual would be able to perform other jobs in the national economy and provided the following examples: cashier, DOT 211.462-010, light, SVP: 2, unskilled, approximately 530,000 in the U.S.; sales attendant, DOT 299.677-010, light, SVP: 2,

5

approximately 250,000 in the U.S.; and photocopy-machine operator, DOT 207.685-014, light, SVP: 2, approximately 9,000 in the U.S. Tr. 62.

For his second hypothetical, the ALJ added mental limitations to the first hypothetical as follows:

> Can maintain attention and concentration for the two-hour segments before and after the two 15 minute morning and afternoon breaks and the 30 minute lunchbreaks. Simple, routine, and repetitive tasks. Frequent interaction with the public and coworkers.

Tr. 62. The VE testified that the hypothetical individual would be unable to perform Plaintiff's past work, and of the other previously identified jobs, only the copy machine operator would be available at the same number of jobs. Tr. 62-63. The VE identified other examples of work that would be available under hypothetical number two as marker, DOT 209.587-034, light, SVP: 2, approximately 130,000 in the U.S.; and router, DOT 222.687-022, light, SVP: 2, approximately 105,000 in the U.S. Tr. 63.

For his third hypothetical the ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience limited to sedentary work with the following limitations: "Will be off task 15 percent of the time. Must be permitted to use a cane for balance and ambulation. Simple, routine, and repetitive tasks." Tr. 63. The VE testified that such a hypothetical individual would not be able to perform any of Plaintiff's past work or any other jobs in the national economy. Tr. 63-64. The VE stated that her "testimony is not inconsistent with the DOT or the SOC, but the DOT does not describe being off task or having to use adaptive equipment such as a cane." Tr. 64.

Plaintiff's attorney asked if there would be any competitive employment for a hypothetical individual who would miss more than three days of work per month. Tr. 64. The VE testified that is "generally not tolerated. Usually it's only one day per month." *Id.* The attorney added to hypothetical one that the individual "would not be able to reach forward with their right shoulder

for more than a third of the workday where the right arm would dangle" and asked if the hypothetical individual could perform Plaintiff's past work. *Id.* The VE responded in the negative. Tr. 65.

The attorney asked if there were any transferable skills from Plaintiff's past work to sedentary work. Tr. 65. The VE responded that "[t]here is but not if it is with very little adjustment." *Id.* Plaintiff's attorney asked the VE to describe the requirements for the sign language interpreter job. The VE testified that in the DOT "it has the requirement of frequent reaching, frequent handling, and frequent fingering." *Id.* The VE noted that if someone is talking fast then it may be more than frequent, and if someone is talking slower it might be less. *Id.* The VE testified that the job generally required standing while doing it, and in the college setting the Plaintiff's ability to sit would be a kind of accommodation. *Id.*

With nothing further, the hearing closed. Tr. 67.

II.   Discussion

   A.   The ALJ's Findings

In his February 9, 2022 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.   The claimant last met the insured status requirements of the Social Security Act on June 30, 2018.
>
> 2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2012 through her date last insured of June 30, 2018 (20 CFR 404.1571 *et seq.*).
>
> 3.   Through the date last insured, the claimant had the following severe impairments: asthma, hip disfunction, and knee arthritis (20 CFR 404.1520(c)).
>
> 4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically

7

> equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except avoid concentrated exposure to extreme heat, extreme cold, wetness humidity, vibrations, fumes, odors, dusts, gasses, and poorly ventilated areas.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a substitute teacher (DOT #249.367-074) SVP 3 light and sign language interpreter (DOT# 137.267-014) SVP 5 light. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2012, the alleged onset date, through June 30, 2018, the date last insured (20 CFR 404.1520(f)).

Tr. 18, 21, 27.

### B. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

9

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650,

653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

  C. Analysis

Plaintiff asserts the ALJ (1) failed to include significant limitations resulting from her impairments and failed to provide an adequate discussion rejecting those limitations and (2) failed to properly consider the consistent opinions in the record supporting limitations that would result in a disability finding. Pl.'s Br. 2, ECF No. 19.

  1. The ALJ's RFC Assessment

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4). Social Security Ruling 96–8p requires that the RFC assessment "include a narrative discussion describing how the evidence

supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

The Administration's policy interpretation on assessing an individual's RFC emphasizes that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The functions identified in the cited regulations include physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 404.1545(b)-(d).

Here, at Step Two of the sequential evaluation process, the ALJ determined that Plaintiff had the severe impairments of asthma, hip dysfunction, and knee arthritis. Tr. 18. Further, the ALJ found Plaintiff has the following non-severe impairments: diabetes, neuropathy, breast cancer (in remission), peripheral occlusion, left thumb tenosynovitis, hypertension, depression, and anxiety. *Id.* At Step Three the ALJ determined that through her date last insured Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of a listed impairment. Tr. 21.

The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b) with environmental limitations. Tr. 21. The ALJ noted that in making his RFC

assessment he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Tr. 21-22. The ALJ also indicated that he considered the medical opinions and prior administrative medical findings in accordance with the regulations. Tr. 22.

Plaintiff asserts that the ALJ did not explain his RFC findings as required by SSR 96–8p which provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Pl.'s Br. 25-26 (quoting SSR 96-8p, 1996 WL 374184, at *7). The court notes, though, that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).

a. Plaintiff's Lymphedema and Fatigue

Plaintiff argues that the ALJ failed to make adequate findings related to her lymphedema and fatigue and he failed to indicate why her RFC did not account for the limitations resulting from these impairments. Pl.'s Br. 26. The Commissioner asserts that substantial evidence supports the ALJ's evaluation of Plaintiff's breast cancer and related treatment side effects. Def's Br. 11, ECF No. 21. The Commissioner contends that the ALJ considered "side-effects—like swelling (lymphedema) and fatigue—associated with Plaintiff's treatment" by noting that certain "'benign objective physical examinations' demonstrated 'an insufficient degree of limitation' to warrant functional limitations in the [RFC] (Tr. 19)." *Id.* at 12-13. However, in citing to medical records showing "silent or benign objective physical examination signs" the ALJ did not include any records regarding swelling and fatigue as argued by the Commissioner. Instead the ALJ referred to findings "in related areas like heart, back/neck, upper extremity joints/skin/strength/tone/sensation/range-of-motion, alertness, behavior, affect, mood, cognition, speech, insight, judgement [sic], and concentration[.]" Tr. 19.

In his discussion of his RFC assessment, the ALJ noted that most of Plaintiff's allegations were about impairments he found to be non-severe, and her remaining allegations were "primarily about arthritis-related and respiratory problems[.]" Tr. 22. The ALJ then stated that "[a]ccording to the claimant, her severe conditions are associated with symptoms and treatment side effects. For example, these include pain, weakness, limited range of motion, paresthesia, edema, crepitus, shortness of breath, dyspnea on exertion, fatigue, pain-related insomnia, and pain/fatigue-related distraction (See e.g. Exhibits 2E; 15E; 23F;[3] Hearing Testimony)." *Id.* The Commissioner appears

---

[3] Exhibit 2E is Plaintiff's January 2018 Disability Report-Adult, Tr. 482-91; exhibit 15E is Plaintiff's Representative Brief dated September 28, 2021, Tr. 573-83; and exhibit 23F contains the Sept. 2017 through March 2019 office treatment records of Dr. Amanda Hathaway of MCG

to argue that because the ALJ acknowledged that Plaintiff's symptoms included edema and fatigue, he did not have to consider Plaintiff's lymphedema as a separate impairment and, to the extent it is an impairment, then "remand is still not warranted because, at best, it was harmless error" as the ALJ determined at Step Two that Plaintiff had at least one severe impairment and continued with the sequential evaluation process. Def.'s Br. 14-15. Plaintiff argues in response that her "lymphedema was not simply a symptom." Pl.'s Reply 5, ECF No. 22 (citing to medical record noting that "'lymphedema is a lifelong condition with no known cure' and 'will continue to progress.'"). Plaintiff further argues that a finding of harmless error is inappropriate because the ALJ did not consider all her impairments throughout the sequential evaluation process. Pl.'s Br. 28-29; Pl.'s Reply 6.

In her January 2018 Disability Report-Adult form Plaintiff identified "fatigue" as one of the medical conditions that caused her to stop working on June 1, 2017. Tr. 483. In a May 2018 Disability Report-Appeal, Plaintiff noted a new medical condition of lymphedema that developed in December 2017. Tr. 506. At the second administrative hearing, when asked what conditions prior to June 2018 impeded her ability to work Plaintiff testified that she has lymphedema on the right side of her neck, under her right arm, and the side of her chest. Tr. 48. She also testified to experiencing fatigue. Tr. 57. In her Brief, Plaintiff cites to medical records that support her testimony, including the statement provided by her treating oncologist Dr. Hathaway. Pl.'s Br. 27. Dr. Hathaway indicated that she diagnosed Plaintiff with "right breast lymphedema secondary to lumpectomy surgery and radiation treatment[.]" Tr. 1799. Dr. Hathaway opined:

> The swelling has gotten bad enough that she missed work (when she was last working). She needs a lymphedema pump. Surgery to correct the lymphedema would make it worse so it is not recommended. The arthritis in right shoulder was made worse by the lymphedema. [Plaintiff's] lymphedema symptoms have lasted

---

Hematology Oncology, Tr. 1767-96.

over 12 months. Due to the lymphedema, [Plaintiff] could not reach fully forward with her right shoulder for more tha[n] a third of the working portion of the workday in any job where her right arm would dangle. Due to the pain from the lymphedema, [Plaintiff] would have problems with attention and concentration sufficient to interrupt tasks more than 15% of the working portion of the workday if she attempted to work on an 8-hour day, 5-day per week basis.

*Id.*

Here, while the ALJ acknowledges that Plaintiff complained of edema, nowhere in his decision does the ALJ mention lymphedema—which is a different type of condition.[4]

As to the Commissioner's argument of harmless error, the designation of no error or harmless error hinges on whether the ALJ considered the impairments either singly or in combination in the subsequent steps of the evaluation process. Courts in this district have held that even if an ALJ errs in finding an impairment non-severe at Step Two, the error is harmless if the ALJ considers the impairment in subsequent steps of the sequential evaluation process. *Angela P. v. Saul*, No. 1:20-CV-2414-SAL-SVH, 2021 WL 3039118, at *17 (D.S.C. Apr. 7, 2021), *report and recommendation adopted,* No. 1:20-CV-02414-SAL, 2021 WL 3038924 (D.S.C. July 19, 2021) ("An ALJ's error in characterizing an impairment as non-severe at step two may be rendered harmless, provided he proceeds beyond step two in the evaluation sequence and considers the impairment in assessing the claimant's RFC."); *Martinez v. Astrue*, Case No. 1:11–cv–850-HMH, 2012 WL 3580675, at *10 (D.S.C. July 30, 2012) *adopted*, 2012 WL 3582799 (D.S.C. Aug. 17, 2012) ("The undersigned agrees with other courts that find no reversible error where the ALJ does not find an impairment severe at step two provided that he [or she] considers that impairment in

---

[4] "While edema can be a general term for acute swelling in the body, lymphedema is a chronic and severe condition that involves significant long-term edema fluid buildup. When someone has lymphedema, their lymphatic system is chronically overloaded and/or experiencing advanced dysfunction that becomes irreversible." *See* https://lymphapress.com/blog/lymphedema-vs-edema-whats-the-difference/ (last visited Aug. 23, 2023).

subsequent steps."); *Simpson v. Commissioner of Social Security Administration*, Civil Action No. 1:09-2731-HFF-SVH, 2011 WL 1261499, at *2 (D.S.C. March 31, 2011)(citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that the ALJ's failure to label an impairment as severe at step two was harmless when the ALJ discussed its limitations at step four); *Washington v. Astrue*, 98 F. Supp. 2d 562, 580 (D.S.C. 2010) (providing that the court "agrees with other courts that find no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

Plaintiff does not argue that the ALJ should have found her lymphedema and fatigue to be severe impairments; she argues that the ALJ "failed to make adequate findings related to [her] lymphedema and fatigue." Pl.'s Br. 26. The Commissioner contends that "the ALJ *considered* the non-severe impairments but determined that even in combination they did not result in any functional limitation that affected Plaintiff's ability to perform work tasks *during the relevant period.* Def.'s Br. 16 (emphasis in original). That may be a true statement, however, as noted above, the ALJ did not determine that Plaintiff's lymphedema was a non-severe impairment. He did not identify or address it at all in his decision (much less in combination with other impairments), nor does he indicate that he took Plaintiff's lymphedema into consideration in formulating his RFC assessment.

In *Mascio v. Colvin*, the Fourth Circuit addressed whether an ALJ's failure to perform a function-by-function assessment necessitates remand. *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015). The court held that "a per se rule [requiring remand] is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* at 636. Nevertheless, the court "agree[d] with the Second Circuit that '[r]emand may be appropriate . . . *where an ALJ fails to assess a claimant's capacity to perform relevant*

17

*functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.*'" *Id.* (emphasis added). Plaintiff has presented evidence that her lymphedema imposed functional limitations that have not been addressed by the ALJ. The ALJ's lack of explanation and analysis of Plaintiff's lymphedema frustrates meaningful review. Accordingly, remand is appropriate so that the ALJ may provide a clearer explanation of his consideration of Plaintiff's lymphedema and fatigue and the effect, if any, on her functioning and work-related abilities during the relevant period.[5]

2.  ALJ's Evaluation of Opinion Evidence

Plaintiff also argues the "ALJ failed to properly consider the consistent opinions in the record supporting limitations that would lead to a finding of disability." Pl.'s Br. 29. Plaintiff contends the ALJ did not adequately explain how he considered the supportability and consistency factors when finding the treating opinions of Drs. Miles and Hathaway unpersuasive. *Id.* at 35. The Commissioner argues that substantial evidence supports the ALJ's evaluation of the opinion evidence. Def.'s Br. 16. The Commissioner acknowledges "there were conflicting opinions about Plaintiff's functional ability" but contends that the ALJ's RFC assessment "accounts for the limitations he found persuasive and rejects the limitations he found not persuasive." *Id.* at 17.

Because the court has determined that the ALJ's functional analysis is incomplete, re-evaluation of the treating physicians' opinions is warranted and detailed analysis of this other allegation of error is not possible at this point. *See Boone v. Barnhart,* 353 F.3d 203, 211 n. 19 (3d Cir. 2003) (remanding on a particular ground and declining to address claimant's additional

---

[5] The court expresses no opinion as to whether Plaintiff's lymphedema would result in additional limitations to her RFC. However, without consideration from the ALJ on this issue, the court is unable to undertake meaningful review of the decision.

arguments). Accordingly, the court does not consider Plaintiff's remaining allegation of error at this time.

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine if the Commissioner's decision is supported by substantial evidence. The court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this Order.

IT IS SO ORDERED.

August 24, 2023                                                     Kaymani D. West
Florence, South Carolina                                       United States Magistrate Judge